OPINION of the Court, by
Judge Owsley.-
John Floyd, on the 8th August, 1781, made with the surveyor the following entry: “ John Floyd, assignee, enters 400 acres upon a pre-emption warrant, No. 669, on the waters of Beargrass; beginning on William Christian’s N. W. line, 160 poles from John Floyd’s and colonel Christian’s corner; thenre N. 37 W. to Taylor’s old surveys; and thence S. 53 W. along his surveys for quantity.” And by his will thereafter made, directed the same to be sold by his executors when they should judge it necessary, or exchanged for slaves, as they might think best, for the benefit of his wife and children ; and made William Pope and his wile, Jenny Floyd, his executors.
After the death of Floyd, and whilst his wife was a widow, and previous to any survey being made upon the entry of Floyd, she made with the propér surveyor the following entry: “ 23d October, 178.3 — -Jenny Floyd, assignee of Benjamin Netherland, enters 400 acres, part, &c. on the waters of Muddy fork of Beargrass, between the lines of William Christian, John Todd and Shelby, and to join John Todd’s survey of 2000 acres, on the north end.” Subsequent to this, she intermarried with Alexander Breckenridge, and shortly thereafter, on the 10th of February, 1785, a survey was made in virtue of her entry; and on the 27th of July, 1786, a patent issued thereon in the name of Benjamin Sebastian, her as-signee.
Within a few days after the intermarriage of Jenny Floyd and Alexander Breckenridge,,he made with a proper surveyor the following entry: “January 12, 1785 — Alexander Breckenridge, assignee, enters 200 acres upon part of a treasury warrant, No. &c. on the Muddy fork of Beargrass, adjoining the ea.st end of an entry of 400 acres, made in the name of JennyTloyd, and *428 to run along John Floyd’s and Christian's line No. 53 E. tül it strikes Shelby’s survey, with a line of the same N. 37 W. till it strikes the back, lines of the river surveys ; then along the same to the hrst line called for ; then to the beginning.” And caused the same to be surveyed on tiie riih April, Í785, aad in virtue thereof obtained a patent on the 27th July, 1786, in his own name,
Alexander ii reckenriuge also on the 28th February, 1785, made with the proper surveyor the following entry : *• Alexander Breckenridge enters 632 acres on paid; of a treasury warrant, No. &c. on tiie Muddy fork of litargcass, adjoining his entry of 200 acres on the southwest side, í loyü’s survey on the northwest, and to jowi the lines of Mercer and Eustace Christian and Peachy.” Ami on the 1st Septe her, 1798, caused a survey of 500 acres to be made thereon, and obtained a patent in his own name on tiie 4th May, 1802.
The 500 acre survey thus made, includes all of the laud patented to Sebastian, as assignee of Jenny Floyd, and part of tiiat patented ;.i tiie name of iireckenridge, under tiie 200 acre entry; hut, as will be perceived from the preceding statement, both those patents are eider in date tnan tiiat which issued upon tne 500 acre survey.
Tne executors named caused the will of John Floyd to be proven, and both of them undertook Us execution by qualifying, Ac. as the law directs.
Alter tne will w as proven, and subsequent to the intermarriage of the executrix Jenny with Alexander Breckenriuge, and without the concurrence of tiie other executor, they sold to the appellee, Sebastian, 400 acres of land ; and by their deed of naegain and sale, bearing date 13th February, 17 86, anil duly signed, sealed and acknowledged by them in open court, on the 2d March, 1786, bargained and Sold, with warranty, (but without mentioning it to he done as executrix of Joan Floyd) with certain metes and.bounus tiie tract so sold, and which includes a part of tiie several preceding claims of Alexander Breckenridge, and that of Sebastian as as-signee of Jenny Floyd, together with part ol another tract, devised by the said Jonn to his wile Jenny.
YV hen this deed was acknowledged to Sebastian no survey bad been made upon the entry of John Jbloyd; hut se» veral years thereafter, in 1790, a survey w as executed ⅛ tiie nainu c»f Jenny Floyd* executrix of John Floyd, *429 deceased, so as to include part of the land sold to Sebastian, and part of each of those claims of Alexander Breckenridge, and that of Sebastian, assignee of Jenny Floyd ; and in 1793 a patent’issued in her name as executrix for the same.
The land described in the deed from Breckenridge and wife to Sebastian, has been since sold and conveyed by deed of bargain and sale to the appellee Massie, against whom the appellants have brought this suit to compel a surrender of his claim.
The appellants also assert their right to the residue of the survey made in the name of Jenny Floyd as executrix, upon the -ntry of John Floyd, and which is not included within the claim of Massie ; and for the purpose of obtaining the title thereto, have brought the appellees Henry and David Reedy before the court. They claim the superior right to that part of the 200 acre claim entered, surveyed and patented in the name of Alexander Breckenridge, which is not within the boundary owned by Massie, but which is also included in the survey made in the name of Jenny Floyd as executrix, upon the 400 acre entry of John 'Floyd, deceased. They deduce their right as heirs to their deceased father George Reedy, who held the same by purchase from Jacob Shrader, who had previously purchased the same from Alexander Breckenridge. The deed to Shrader appears to have been signed by both Breckenridge and his wife, but was acknowledged alone by Breckenridge in open court the 1st day of October 1793 ; and after Shrader sold to George Reedy, in consequence of an opinion then existing that the deed to Shrader was not valid, because of the executors of Floyd not having joined in tiie deed, another deed was prepared, purporting to have been made by Breckenridge, the executors of Floyd, and Shrader and wife, to Reedy ,* hut that deed also was not acknowledged by the executors of Floyd.
In this state of title the appellants, as devisees of John Floyd, deceased, exhibited their bill in equity against Sebastian, Massie, and the Reedys, asserting their cla.m to the400 acre entry; alleging it to be a valid entry and correctly surveyed, and superior to either of those claims entered in the name of Breckenridge or Jenny Floyd ; but if it should not be deemed a vaiid entry in relatiort to adverse conflicting claims, they contend that as respects the claims entered by Breckenridg<S*and Je«- *430 ny Floyd they should be held in trust for the benefit of j-|1R devisees of Floyd, because when those claims were created, as they allege, Jenny Floyd was the guardian of the devisees (who were then infants) and the executrix of John Floyd’s will, by which the 400 acre entry was directed to be sold; and Breckenridge having intermarried with her, neither him nor his wife could by any act of theirs prejudice the estate of the devisees.
If the entry of John Floyd be admitted to be invalid, we cannot perceive the principle upon which the Reedys can be compelled to surrender their claim. Although the deed from Breckenridge to Shrader may have been supposed invalid in consequence of the executors of John Floyd not joining in it, as Breckenridge had before that obtained a patent upon his 200 aci’c entry, there can be no question as respects it but what the legal title might and did pass by the deed to Shrader. And whatever may be the effect of entries made by Jenny Floyd, after the decease of John Floyd, and whilst she was clothed with the authority given by his w ill, neither her character as guardian nor her office of executrix can disable Breckenridge (her husband) from gaining an interest in the land,or convert that interest into a trust for the use or benefit of the devisees of Floyd.
As executrix of the will of John Floyd, she certainly could not, under the authority given to sell the entry of Floyd, become herself the purchaser ; and by a parity of reason she should not be permitted to divest herself of the character assumed by undertaking the execution of the will, and by the acquisition of a new interest in her individual right defeat the trust estate entirely.
But with respect to Breckenridge, although upon his marriage with Mrs. Floyd they became in legal contemplation one person, and could not, generally speaking, contract with each other, yet whenever it became necessary to act in auter droit, as where the wife, as in the present case, has authority by will to sell, there, as she may act without her husband, she can sell to her husband. — Co. Litt. 112 a — 2 Com. Dig. 78, D i, 98, p. 3.
As, therefore, Breckenridge might, notwithstanding his marriage with the executrix, have purchased the estate from her, he cannot be considered identified in her character as executrix or trustee, and consequently was not by reason of her trust character disabled from acquiring a separate interest in the estate held in trust.
*431 With respect to Mrs. Floyd’s character as guardian, it cannot affect the interest acquired by Breckenridge : for waiving the inquiry how far a husband would be affected by the wjfe being either guardian in socage, testamentary or statutory guardian, it is clear Breckenridge cannot be disabled from acquiring an interest in the estate in question by reason of his wife being the natural guardian of the appellants. As guardian in socage, testamentary or statutory guardian, perhaps her husband might be affected : for as in that character she would have the management of the wards’ estate, it might be proper to restrain him as well as her from doing any thing to the prejudice of the estate. But there is nothinginthis cause showing her to be either a statutory or testamentary guardian ; and as the appellants derive title to the estate, not as heirs, but by purchase, she cannot be denominated guardian in socage. — Harg. note 1 to Co. Litt. 87 b. She must therefore, if in any sense a guardian, be the natural guardian ; and as such she had nothing to do with the estate, but the custody of the infants’ persons. — Harg. note 12 to Co. Litt. 88 b.
As, therefore, the Reedys, through Breckenridge, have obtained the legal title under the 200 acre patent of Breckenridge, elder in date than that which issued in virtue of the entry of John Floyd, claimed by the appellants,- and as the title so obtained by them was not held in trust by Breckenridge, they cannot be compelled to surrender that title, unless the entry of John Floyd shall be found to possess the necessary requisites to succeed against an adverse claim.
That entry-calls to begin on William Christian’s N. W. line, 160 poles from John Floyd’s and Col. Christian’s corner, thence N. 37 W. to Taylor’s old surveys, Ac. Prior to the making this entry surveys had been made for Christian and Floyd, adjoining and presenting a northwest line suitable to the call in the entry; and before the date of the entry stations had been settled upon each of those surveys, and when it Was made those surveys had become generally notorious : so that no difficulty could arise in finding the beginning called for in Floyd’s entry; but when found, although the course from thence is given in the entry, a subsequent locator could not by the exercise of reasonable diligence have ascertained the old surveys .'of Taylor alluded to in the entry: for it is in proof that no such surveys were *432 known to the generality of those conversant in that part of tlse country : and if the trouble of going to the office of Fincastle, was not supposed an unreasonable burthen, a subsequent locator, when there, could find in the books of that office no such surveys ; or if the inquirer should have pursued the course called for, it is not shown that the line of the survey contended for by the appellants was marked so as to have been at that time discoverable ; or if by chance it had been discovered, as, instead of the course called for it extended S. 36 W. a variance of 17 degrees, the inquirer could not have reasonably suppos* ed it to be the survey called for ; but if, more thorough* ]y to satisfy himself, he should be induced to make further inquiry, that survey might have been found to belong to William Peachy, and not Taylor.
Under these circumstances, the entry of Floyd cannot, upon the most ben go rules of interpretation, be construed to possess that certainty of description essential 'to prevail against an adverse claim; and as such tbs court below properly dismissed the appellants’ bill as to the Reedys.
With respect to M assie, it will be recollected he claims through the deed from Bre< kenridge and wife to Sebastian, the residue of the 200 acre survey not held by the Reedys, together with so much of the surveys made upon the entry of 400 acres made in the name of Jenny Floyd, and that made upon a 500 acre entry in the name of Breckenridge, and which, is in common to each of those surveys and the survey made upon the entry of Floyd, and also within the boundary described by the deed to Sebastian. For so much, therefore, of Massie’s claim as falls within the 200 acre entry, as we have before shown that claim to be paramount to that of the appellants, tlwv cannot be entitled to relief. But as we have also shown Jenny Floyd couhl not, owing to the character she assumed under the will of Floyd, gain an interest separate from that held under the will, the entry, when made by her, must have enured to the benefit c' those to whose use the land was directed to be sold; and consequently-those now in possession of that title, ui less they can be protected under the sale and conveyance to Sebastián, or shelter themselves under the 500 acre claim of Breckenridge, must be considered as holding ⅛ trust for the appellants', and subjeet to the control of a court of eqftity.
*433 The claim of Breckenridge can certainly afford no protection, for its patent is junior to either of the others, ant! no attempt has been made to establish the entry.
Whether Jenny Floyd, upon the refusal of the other executor to act, could have sold the land in execution of the authority given by the will of Floyd, need not, we apprehend, be decided: for as no such refusal is shown, to have been made, the sale and conveyance by her cannot, if so intended by her, be held a fulfilment of the authority given by the will. But as before the conveyance to Sebastian, the entry of Jenny Floyd, then Jenny Breckenridge, bad been surveyed, although that claim also in contemplation of equity enured to the benefit of those entitled to the entry of Floyd, vet in legal estimation the right was vested in her, and consequently alienable by her.
The deed by Breckenridge and wife, therefore, notwithstanding bv reason of no patent having previously issued, it could not pass a perfect title, yet it operated as an assignment of the survey of Mrs. Breckenridge to Sebastian, and by the subsequent emanation of the patent to him he became vested with the perfect title.
This title thus procured by Sebastian, as he moreover appears to be a purchaser for a valuable consideration, will most clearly protect Massic, unless Sebastian is shown to have had notice of the trust to which the claim was subject in the hands of Mrs. Breckenridge, (late Jenny Floyd) either before he paid the purchase money or perfected his title. We are, however, of opinion, that the e vidence in the cause does not establish such notice; and consequently Massie cannot be compelled to surrender his claim..
Upon the whole, we are of opinion the decree of the court below must be affirmed with costs.